IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

ARLENE BIBLE                                                              PLAINTIFF

v.                              CIVIL NO. 16-5118

NANCY A. BERRYHILL,
Acting Commissioner, Social Security Administration[1]               DEFENDANT

## MEMORANDUM OPINION

Plaintiff, Arlene Bible, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claims for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") under the provisions of Titles II and XVI of the Social Security Act ("Act"). 42 U.S.C. §§ 423(d)(a)(A), 1382c(a)(3)(A). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I.    Procedural Background:**

Plaintiff protectively filed her applications for DIB and SSI on September 30, 2013. (ECF No. 11, pp. 18, 263, 293). In her applications, Plaintiff alleges disability due to Raynaud's disease, leg problems, a cyst, fainting, and headaches. (ECF No. 11, p. 267). Plaintiff alleged an onset date of January 1, 1999, which was amended at Plaintiff's

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

administrative hearing to July 1, 2013. (ECF No. 11, pp. 18, 57-58). Plaintiff's applications were denied initially and again upon reconsideration. (ECF No. 11, pp. 67-124).

Thereafter, Plaintiff requested an administrative hearing on her denied applications, and this hearing request was granted. (ECF No. 11, pp. 177-82). Plaintiff's administrative hearing was held on December 3, 2014, in Fayetteville, Arkansas (ECF No. 9, pp. 32-54). Plaintiff appeared in person and was represented by John Williams. Id. Plaintiff and Vocational Expert ("VE") Sarah Moore testified at this hearing. Id. At the time of this hearing, Plaintiff was fifty (50) years old, which is defined as a "person closely approaching advanced age" under 20 C.F.R. §§ 404.1563(d), 416.963(d). As for her level of education, Plaintiff has earned a GED. (ECF No. 11, p. 268).

After this hearing, on August 28, 2014, the ALJ entered an unfavorable decision denying Plaintiff's applications for DIB and SSI. (ECF No. 11, pp. 15-29). In this decision, the ALJ found Plaintiff continued to meet the insured status requirements of the Act through September 30, 2014. (ECF No. 11, p. 20, Finding 1). The ALJ found Plaintiff had not engaged in Substantial Gainful Activity ("SGA") since July 1, 2013, her amended alleged onset date (ECF No. 11, p. 20, Finding 2). The ALJ determined Plaintiff had the following severe impairments: major depressive disorder; panic disorder; alcohol dependence; personality disorder NOS (cluster B and C traits) and a history of Raynaud's syndrome. (ECF No. 11, p. 20-21, Finding 3). Despite being severe, the ALJ determined these impairments did not meet or medically equal the requirements of any of the Listings of Impairments in Appendix 1 to Subpart P of Part 404 ("Listings"). (ECF No. 11, pp. 21-23, Finding 4).

The ALJ then considered Plaintiff's Residual Functional Capacity ("RFC"). (ECF No. 11, pp. 23-28, Finding 5). First, the ALJ evaluated Plaintiff's subjective complaints and found

her claimed limitations were not entirely credible. Id. Second, the ALJ determined Plaintiff retained the RFC to perform:

> a full range of work at all exertional levels but with the following nonexertional limitations: [Plaintiff] must avoid all exposure to extreme cold; [Plaintiff] can work where interpersonal contact is routine but superficial, where the complexity of tasks is learned by experience and where there may be several variables; [Plaintiff] can use judgment within limits; and [Plaintiff] can work where the supervision required is little for the routine, but detailed for non-routine.

Id. The ALJ then determined Plaintiff was able to perform her Past Relevant Work ("PRW") as a Cashier II. (ECF No. 11, pp. 28-29, Finding 6). The ALJ therefore determined Plaintiff had not been under a disability, as defined by the Act, from July 1, 2013, Plaintiff's amended alleged onset date, through January 23, 2015, the date of the ALJ's decision. (ECF No. 11, p. 29, Finding 7).

Thereafter, on February 18, 2015, Plaintiff requested a review by the Appeals Council (ECF. No. 11, pp. 13-14). The Appeals Council denied this request on March 25, 2016. (ECF No. 11, pp. 5-11). On May 27, 2016, Plaintiff filed the present appeal with this Court. (ECF No. 1). The parties consented to the jurisdiction of this Court on June 23, 2016. (ECF No. 7). This case is now ready for decision.

## II. Applicable Law:

This Court's role is to determine whether substantial evidence supports the Commissioner's findings. Vossen v. Astrue, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. Teague v. Astrue, 638 F.3d 611, 614 (8th Cir. 2011). We must affirm the ALJ's decision if the record contains substantial evidence to support it. Blackburn v. Colvin, 761 F.3d 853, 858 (8th Cir. 2014). As long as there is

3

substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. Miller v. Colvin, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. Id.

A claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); See also 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Only if she reaches the final stage does the fact finder consider Plaintiff's age,

education, and work experience in light of his residual functional capacity. See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982), abrogated on other grounds by Higgins v. Apfel, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## III. Discussion:

Plaintiff raises a single issue on appeal, that the ALJ failed to properly consider Plaintiff's longitudinal history of GAF scores in assessing her RFC. (ECF No. 12).

RFC is the most a person can do despite that person's limitations. 20 C.F.R. §§ 404.1545, 416.945. A disability claimant has the burden of establishing his or her RFC. Vossen v. Astrue, 612 F. 3d 1011, 1016 (8th Cir. 2010). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." Jones v. Astrue, 619 F.3d 963, 971 (8th Cir. 2010); Davidson v. Astrue, 578 F.3d 838, 844 (8th Cir. 2009). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Miller v. Colvin, 784 F.3d 472, 479 (8th Cir. 2015) (citing Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Perks v. Astrue, 687 F.3d 1086, 1092 (8th Cir. 2012).

A GAF score is a numerical assessment between zero and one hundred that reflects a mental health examiner's judgment of an individual's social, occupational, and psychological function. Kluesner v. Astrue, 607 F.3d 533, 535 (8th Cir. 2010); Jones v. Astrue, 619 F.3d 963, 973 (8th Cir. 2010) ("The GAF score is a subjective determination that represents 'the

clinician's judgment of an individual's overall level of functioning'") (internal citation omitted). We have long held that, while occasionally helpful, a particular GAF score does not warrant a finding of disability, and a failure to analyze GAF scores alone is not proper grounds to reverse a disability determination. Jones at 973. (citing with approval cases from the United States Court of Appeals, Sixth Circuit) (internal citation and quotation omitted). The Court is cognizant of cases where the Eighth Circuit has held that GAF scores, especially those at or below 40, must be carefully evaluated when determining a claimant's RFC. See, e.g., Conklin v. Astrue, 360 F. App'x. 704, 707 (8th Cir. 2010) (reversing and remanding in part because the ALJ failed to consider a claimant's GAF scores of 35 and 40); Pates-Fires v. Astrue, 564 F.3d 935, 944-45 (8th Cir. 2009) (holding that the ALJ's RFC finding was not supported by substantial evidence in the record as a whole, in part due to the ALJ's failure to discuss or consider numerous GAF scores below 50). We return to the primary charge of this Court, however, and as long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. Miller v. Colvin, 784 F.3d 472, 477 (8th Cir. 2015). As the Eighth Circuit has long held, we must affirm the ALJ's decision if, after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ. Id.

In the present case, The ALJ's RFC determination is supported by substantial evidence in the record as a whole, despite the ALJ's failure to discuss Plaintiff's specific GAF scores. Plaintiff began treatment at Ozark Guidance on March 27, 2014, eight months after her alleged onset date. (ECF No. 11, pp. 401-412); See Moad v. Massanari, 260 F.3d 887, 892 (8th Cir.

2001) (In assessing credibility, the Court noted that Plaintiff had not sought treatment from any physician in the seven months prior to the administrative hearing). Plaintiff endorsed on multiple occasions throughout her treatment that her alleged mental health impairments had initially presented as early as the age of seven years old and persisted through her working years. (ECF No. 11, pp. 401-405, 414, 425, 702). See Goff v. Barnhart, 421 F.3d 785, 792-93 (8th Cir. 2005) (Continuing to work with alleged impairments and an absence of evidence of significant deterioration in a claimant's condition demonstrates the impairments are not disabling in the present). She testified that she stopped working because the facility she was working at closed and she never acquired a new job. (ECF No. 11, p. 58); See Goff, at 792-93 ("Courts have found it relevant to credibility when a claimant leaves work for reasons other than her medical condition"). The Court also notes that Plaintiff did not allege any mental health impairments in her disability applications. See Dunahoo v. Apfel, 241 F.3d 1033, 1039 (8th Cir. 2001) (The fact that the claimant did not allege depression on the benefits application is significant, even if evidence of depression was later developed). Plaintiff testified as follows:

> Q  How often do you go to Ozark Guidance Center?
> A  It's down to about once a month.
> Q  Okay. What have you been diagnosed with?
> A  Diagnosed?
> Q  Yes.
> A  I don't have a diagnosis yet, she didn't diagnosis me much. I went and saw the doctor and I got some anti-depressants and anxiety pills.
> Q  Well, they've told you that you have depression, is that right?
> A  Yeah.
> Q  And post traumatic stress disorder?
> A  No, the words, those never came out.
> Q  Okay.
> A  I'm assuming that's what it has to be.

Id. Her testimony demonstrates that she did not know what mental impairments her treatment providers had diagnosed her with at the time of her hearing despite all of her treatment, save a

7

single appointment in January of 2015, occurring between March 27, 2014, and Plaintiff's administrative hearing on December 3, 2014. (ECF No. 11, p. 61).

Plaintiff first sought treatment at Ozark Guidance on March 27, 2014. (ECF No. 11, pp. 401-412). Her primary Axis I diagnosis was posttraumatic stress disorder. (ECF No. 11, p. 408). She also had a secondary Axis I diagnosis, which was alcohol abuse, continuous, and a tertiary Axis I diagnosis of depressive disorder not otherwise specified. Id. On Axis II, Plaintiff was diagnosed with borderline personality disorder. Id. On Axis III, Plaintiff was diagnosed with Raynaud's syndrome. Id. On Axis IV, the examiner identified Plaintiff had problems related to her primary support group and her social environment as well as occupational and economic problems. Id. On Axis V, Plaintiff was assigned a GAF score of 44. Id. These diagnoses were established in Plaintiff's Master Treatment Plan and were carried forward throughout all of Plaintiff's treatment. (ECF No. 11, pp. 401-27, 697-713).

On July 28, 2014, Plaintiff's treatment provider began noting Plaintiff was making "some progress" and listed her prognosis as "fair." (ECF No. 11, p. 421). Further progress was noted on September 12, 2014. (ECF No. 11, p. 425). On October 6, 2014, her treatment provider noted "steady progress, some reduction in anxiety observed." (ECF No. 11, pp. 427, 707). A psychiatric examination was performed on October 7, 2014. (ECF No. 11, pp. 697-700). Plaintiff's thought process was logical, although racing, her associations were intact and she reported no delusions or hallucinations. Id. Despite a labile and tearful affect and sad, repressed, and anxious mood, Plaintiff exhibited normal orientation to person, place, time, and circumstance, as well as normal memory, attention and concentration, judgment and insight, language, and she possessed an average fund of knowledge. Id. Another psychiatric examination on January 24, 2015, revealed only normal findings except that Plaintiff was

8

described as restless and fidgety and that her mood was sad and anxious. (ECF No. 11, pp. 711-713).

Plaintiff attended a consultative examination with Dr. Efird on December 11, 2013, approximately three months prior to receiving services at Ozark Guidance. (ECF No. 11, pp. 387-90). Plaintiff denied having received inpatient or outpatient mental health services in the past. (ECF No. 11, p. 387). Dr. Efird noted Plaintiff exhibited a sad and anxious mood and a distressed and tearful affect. Id. a 388. Her speech was normal. Id. Her thought processes were logical, relevant, and goal directed. Id. She was alert and oriented to person, place, and time. Id. Dr. Efird diagnosed Plaintiff as follows:

> Axis I: major depressive disorder, moderate; panic disorder, without agoraphobia; alcohol dependence
> Axis II: personality disorder NOS (cluster B and C traits)
> Axis V: 50-60

Id. at 389. Dr. Efird opined Plaintiff communicated in a manner that was reasonably intelligible, effective, and socially adequate. Id. at 390. He determined Plaintiff could perform basic cognitive tasks required for basic work activities and maintained the mental capacity to persist with tasks if desired and complete basic work tasks in a reasonable time frame. Id.

The ALJ's RFC determination is consistent with both Dr. Efird's opinion and the substance of Plaintiff's psychiatric evaluations and treatment notes at Ozark Guidance. The ALJ determined Plaintiff "can work where interpersonal contact is routine but superficial, where the complexity of tasks is learned by experience and where there may be several variables; [she] can use judgment within limits; and [she] can work where the supervision required is little for the routine, but detailed for non-routine." Dr. Efird's opinion and the treatment notes from Ozark Guidance are substantial evidence which support the ALJ's RFC determination. Regardless of the analysis of any individual GAF score, as long as there is

9

substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because other substantial evidence exists in the record that would have supported a contrary outcome. Miller at 477. Even if this Court independently analyzed Plaintiff's individual GAF scores and were able to draw an inconsistent position from the other evidence, we must affirm the ALJ's decision when one of those positions represents the findings of the ALJ. Id. Based on the foregoing, this Court finds the ALJ did not commit reversible error by failing to analyze Plaintiff's GAF scores, and that substantial evidence in the record as a whole supports the ALJ's RFC determination.

**IV.     Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision is hereby affirmed. The undersigned further finds that the Plaintiff's Complaint should be, and is hereby dismissed with prejudice.

IT IS SO ORDERED this 3rd day of July, 2017.

/s/ *Erin L. Wiedemann*
HON. ERIN L. WIEDEMANN
UNITED STATES MAGISTRATE JUDGE